Sunnyside Land Company, Inc. v. Commissioner.
Sunnyside Land Co. v. Commissioner
Docket No. 174.
United States Tax Court
1943 Tax Ct. Memo LEXIS 222; 2 T.C.M. (CCH) 347; T.C.M. (RIA) 43316; June 29, 1943
*222 Robert J. Heberle, Esq., State Planters Bank Bldg., Richmond, Va., for the petitioner. Philip A. Bayer, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in personal holding company surtax liability for the year 1937 in the amount of $910. Respondent also determined a 25 per cent penalty in the amount of $227.50 for failure to file a personal holding company return, Form 1120H. Findings of Fact Petitioner has its office in Richmond, Virginia. It filed a corporation income and excess profits tax return (Form 1120), for the year 1937 with the collector for the district of Virginia. Petitioner is a personal holding company. Eighty per cent or more of its income is derived from royalties. In its return which it filed on Form 1120, petitioner stated that it was not a personal holding company within the meaning of section 351 of the Revenue Act of 1936. Petitioner has not filed at any time a personal holding company return on Form 1120H. Petitioner now concedes that it is a personal holding company within the purview of the above section. Petitioner keeps its books on the accrual basis. During 1937, the officers *223 of petitioner were as follows: H. C. Beattie, president; C. S. Luck, Jr., vice-president; A. J. Minor, secretary-treasurer. The total outstanding stock consists of 150 shares, of which 75 shares, each, are owned by H. C. Beattie and C. S. Luck, Jr., respectively. Petitioner derived its income in 1937 from royalties from Sunnyside Granite Company which amounted to $2,400. Its net income was $1,798.70, its Federal income tax was $259.74, leaving a net amount of $1,538.96. During 1937, petitioner paid $1,400 to Beattie. The reasons for the payments are found in transactions and circumstances as follows: In 1932 Beattie alleged that he had some claim against petitioner and he threatened to bring suit for recovery of $15,000. He alleged that petitioner owed him that amount as a stockholder out of royalties received from Sunnyside Granite Company. Petitioner has never distributed any dividends to its stockholders. A settlement of this claim was made under an agreement which was executed on September 30, 1932, by and between C. S. Luck, Jr., party of the first part; petitioner, party of the second part; and H. C. Beattie and his wife, parties of the third part. It is stated in the agreement *224 that Beattie claimed that Luck, as a stockholder of petitioner, was indebted to him for rentals paid, or to be paid, to the petitioner by the Sunnyside Granite Company; that such rentals were being used in payment of a debt in the principal sum of $15,000, to a firm named Pollard & Bagley. The agreement provides further that Luck and petitioner agreed to pay Beattie $7,500 under the terms of the agreement in full settlement of all of Beattie's claims against petitioner. The parties agreed that petitioner would issue to Beattie 75 notes, in the amount of $100 each, without interest, dated October 1, 1933, and payable monthly for 75 months after that date, and that the notes would be secured by a deed of trust upon all of the real property then owned and thereafter to be acquired by petitioner from Beattie and his wife. The agreement contains further provisions, as follows: (2) From and after October 1st, 1933, the said party [C. S. Luck, Jr.] of the first party assigns to the said H. C. Beattie all of his right, and interest in and to the net profits arising from certain monthly rentals belonging to the said party of the second part and arising out of a certain lease dated October *225 1st, 1928 between Sunnyside Land Company Incorporated, H. C. Beattie and the Sunnyside Granite Company Incorporated, which lease is now yielding a rental of Three Hundred Dollars ($300.00) per month and after October 1st, 1933 will yield a minimum rental of Two Hundred Dollars ($200.00) per month, to be used by the said party of the second part to pay and discharge the aforesaid seventy-five (75) notes for One Hundred Dollars each, provided however, that when all of said seventy-five notes shall have been fully paid and satisfied then this assignment shall be inoperative, null and void and of no effect, and the said parties hereto shall be restored to their respective full and equal rights to share the net income received by the party of the second part from said lease or otherwise. (3) The said party of the first part agrees that the said H. C. Beattie shall be an equal one-half owner in the capital stock of the said party of the second part, and that he will surrender and cancel a certain claim of C. S. Luck & Sons against the party of the second part, which claim he, the said party of the first part, now owns. (4) The said H. C. Beattle agrees to accept the said seventy-five *226 notes totaling the sum of Seventy-five Hundred Dollars secured as aforesaid in full satisfaction of all claims and demands of every kind and description which he may have in the funds used or to be used by the said Land Company in the payment of the certain mortgage debt of Fifteen Thousand Dollars heretofore referred to. (5) The said parties of the third part further covenant and agree that they will be good and sufficient deed of bargain and sale, convey unto the said Sunnyside Land Company Incorporated all of their right, title and interest in and to certain real property located in the County of Henrico, Virginia, which property was conveyed to H. C. Beattie and Robert M. Beattie by Caroline C. Beattie, widow, by deed daced June 4, 1907 and recorded in the aforesaid clerk's office in D.B. 216-A, page 138, excepting, however, a certain parcel containing one and forty-four-one-hundredths (1.44) acres, more or less, conveyed by the parties of the second and third parts to the R.F. & P. RR. Company, to which deed reference is hereby made for greater particularity. The said parties of the second and third parts agree that the balance due the Land Company by the R.F. & P. Railroad *227 Company on account of the purchase of said tract of land shall be the exclusive property of the said C. S. Luck, Jr., and hereby declare that they have no interest of any kind in said fund." Petitioner gave 75 notes for $100 each to H. C. Beattie, in compliance with the agreement, and a deed of trust to W. W. Beverley and S. G. Christian, trustees, upon various parcels of land to secure the above notes and another note in the principal sum of $10,000, with 6 per cent interest. The deed of trust recites that the described property is conveyed in trust as security, as follows: IN TRUST to secure, FIRST, the payment of the principal sum of Seventy-five Hundred Dollars ($7500.00) without interest, as evidenced by seventy-five (75) certain negotiable promissory notes, all dated October 1st, 1933 for the sum of One Hundred Dollars ($100.00) each, and payable from one (1) to seventy-five (75) months after date, both inclusive; and SECONDLY, the payment of the principal sum of Ten Thousand Dollars ($10,000.00), with interest thereon, as evidenced by one certain negotiable promissory note, dated October 1st, 1933, payable one (1) year after date, with interest thereon at six per centum *228 (6%) per annum from date until paid, payable annually; all of said notes being made by the Sunnyside Land Company, Incorporated by C. S. Luck, Jr., its Vice-President, payable to H. C. Beattie, or order, at the State-Planters Bank and Trust Company, of Richmond, Virginia; the last mentioned note for Ten Thousand Dollars being subordinate and inferior in dignity to the seventy-five notes first hereinbefore mentioned. The deed of trust was executed on September 30, 1932 and was recorded in the office of the Clerk of the Circuit Court of the County of Henrico on October 11, 1932. Meetings of the stockholders and directors of petitioner were held on October 6, 1932. Resolutions were adopted authorizing petitioner's officers to execute the notes aggregating $7,500, and another note of $10,000, and the deed of trust. The $10,000 note was to be dated October 1, 1933; was to become payable one year after date, with interest. In the minutes of the meeting of the directors it is stated that the note of petitioner for $10,000 "is to be pledged by C. S. Luck, Jr., as collateral security for the payment of a debt in the principal sum of Ten Thousand Dollars ($10,000) made by C. S. Luck, Jr., *229 dated October 1, 1932." The balance sheet of petitioner as of December 31, 1937, shows the following: ASSETS
Due from Sunnyside Granite Company, Inc.
$ 4,071.75
Due from H. C. Beattie
500.00
Fixed Assets Pledged to secure Notes Payable: Land
$ 4,560.00
Quarry Deposits
$54,434.06
Less: Reserve for Depletion
22,360.78
32,073.28
Improvements
5,488.14
Less: Reserve for Depreciation
2,608.61
2,879.53
39,512.81
Cash on deposit in closed bank
142.70
Deferred charges on unexpired insurance
24.05
Total
$44,251.31
LIABILITIES
Accrued Taxes Payable - Federal and State
$ 293.27
Notes Payable to H. C. Beattie
(Secured by lien on Land and Quarry Deposits
25 notes at $100 due monthly from 1/1/38)
2,500.00
Net Worth: Capital stock outstanding
$15,000.00
Capital surplus
22,217.03
Earned surplus: Balance 1/1/37
$3,053.49
Net gain - 1937
1,187.52
4,241.01
41,458.04
Total
$44,251.31
The following explanation of Capital Surplus appears in the auditor's report: CAPITAL SURPLUS represents the excess of the estimated value of land acquired from H. C. Beattie (in 1933) over the $7,500.00 par value of stock received by him *230 in payment therefor. There were no changes in this account during the year. The notes executed by petitioner in 1932, payable to H. C. Beattie, monthly, for 75 months, were an obligation of petitioner. Opinion Issue 1. Petitioner alleges that the three year period of limitations has run, section 275(a) of the Revenue Act of 1936, so that the assessment and collection of any deficiency in personal holding company surtax liability for the year 1937 is barred. The notice of deficiency in personal holding company surtax liability is dated October 26, 1942. Petitioner has never filed a personal holding Company surtax return, Form 1120 H. Petitioner contends that the filing of such return was not necessary to start the running of the period of limitations, because the filing of the corporation income and excess profits tax return, Form 1120, on March 14, 1938, was sufficient to start the running of the limitations period with respect to the assessment and collection of both income and excess profits tax and personal holding company surtax. Petitioner relies upon . The same question was fully discussed *231 and considered in . The taxpayer's argument was rejected. We believe petitioner's contention here should be reversed for the same reasons which were expressed in Lane-Wells Co. case, and for the further reason that, here, petitioner did not provide the Commissioner with the most pertinent information in the return which was filed on Form 1120, to wit, that all of its stock was owned by two persons. That fact is one of the necessary facts for a determination of a personal holding company surtax liability under the definition contained in section 352 of the Revenue Act of 1936, as added by section 1 of the Revenue Act of 1937, which defines a personal holding company as one in which more than 50 per cent of the stock is owned by not more than 5 individuals, among other things. After many years it has been established that an additional return, Form 1120 H, is required to be filed if a corporation is a personal holding company. That is made clear on Form 1120, in the following question: 5. Is the corporation a personal holding company within the meaning of section 351 of the Revenue Act of 1936, as amended by *232 the Revenue Act of 1937? (If so, an additional return on Form 1120 (H) must be filed.) Petitioner answered "no" to the above question, but petitioner had notice of the requirement for filing a separate return. Petitioner now concedes that it is a personal holding company. The evidence shows, in our opinion, that petitioner's failure to file the additional return on Form 1120 H was due to willful neglect. The Circuit Court of Appeals for the Ninth Circuit, reversed this Court's decision, in the Lane-Wells Co. case on March 22, 1943. See . Petition for certiorari has been filed with the Supreme Court. [1] In view of the many cases which were cited in this Court's opinion in the Lane-Wells Co. case, and upon the special facts here, we respectfully decline to follow the views expressed by the Circuit Court of Appeals, and hold that the assessment of a deficiency in personal holding company surtax liability in this case is not barred.
Issue 2. Petitioner alleges *233 that respondent erred in asserting the 25 per cent penalty for failure to file the personal holding company return. Under section 291 of the Revenue Acts of 1936, the penalty is mandatory, unless reasonable cause for the failure to file the return is shown. In , we said that reasonable cause is only effective to avoid the penalty if the return is delayed - not when the return is omitted entirely. See, also, , and ; 501, affd. ; . However, in , we pointed out that the test laid down in the provision in the 1936 Act for the imposition of the penalty is "willful neglect." and that proof that the failure to file a return is due to reasonable cause will serve to avoid the penalty. The question, therefore, is whether petitioner's failure to file the personal holding company return on Form *234 1120 H was due to reasonable cause. Petitioner must show that its failure in this matter was "due to reasonable cause and not to willful neglect." There was no doubt at all that all of petitioner's income during the taxable year was "personal holding company income" as defined in sections 352(a)(1) and 353(a) of the Revenue Act of 1937. It consisted of royalties paid by the Sunnyside Granite Company, lessee, for stone extracted from property owned by petitioner or of minimum royalties required by the lease, or both. In the auditor's report of petitioner's books for 1937, the following statement appears: Royalties received during the year were computed by us in connection with our examination of the Sunnyside Granite Company, Lessee, and are based upon that Company's record of tonnage of stone sold. According to information furnished by Mr. C. S. Luck, Jr., all of the stone extracted by the Sunnyside Granite Company. Inc., since April 1, 1937, and fifty percent of the stone extracted during the first three months of 1937, was from property owned by that Company. Hence, Royalty payments were calculated at the minimum charge of $200 per month in accordance with the terms of the lease. *235 In the statement of income and expense, the gross income is stated to be "Royalties (12 months at $200 minimum charge) $2,400." Under such facts, petitioner's failure to file a separate personal holding company surtax return on Form 1120 H was due to willful neglect. Petitioner has failed to show that the failure was due to reasonable cause. It is held that respondent correctly imposed the penalty prescribed by section 291 of the 1936 Act. Under the most favorable holding here for petitioner under Issue 3, hereinafter, there would be undistributed adjusted net income of $138.96, upon which the 65 percent surtax amounts to $90.32. The 25 percent penalty, computed upon that deficiency, amounts to $22.58; total, $112.90. Petitioner states in its petition that, on January 28, 1942, it filed a claim for refund of personal holding company surtax in the amount of $112.90. Under the holdings made under Issucs 1 and 2, the minimum deficiency is $112.90, and there has not been any overpayment of personal holding company surtax. Issue 3. The question under this issue is whether petitioner is entitled to deduct $1,400 in 1937 from its adjusted net income under section 355 of *236 the Revenue Act of 1936, as added by section 1 of the Act of 1937, [1] in computing its "undistributed adjusted net income". Petitioner contends that subsection (b) applies. Petitioner's contention is sustained. Although Beattie originally claimed that Luck owed him some amount in the neighborhood of $15,000, there were other matters to be adjusted by and between all of the parties to the 1932 agreement. As a result of that agreement, Luck surrendered a claim of C. S. Luck & Sons against petitioner, which he owned, and Beattie and his wife agreed to convey by deed to petitioner all of their interest in certain real property. *237 Petitioner upon proper authorization executed its notes dated October 1, 1933 to Beattie. The consideration received by petitioner for its notes consisted of an interest in certain real estate and the release of Luck's claim against petitioner. There is some question about the significance of Luck's assignment to Beattie of his interest in future net earnings of petitioner, but we are satisfied that Luck made that assignment as an assurance that the notes would be paid in accordance with the agreement. It is held that the amount of $1,400 was paid in 1937 to retire an indebtedness incurred prior to January 1, 1934, and that, accordingly, petitioner's adjusted net income shall be reduced by $1,400. Decision will be entered under Rule 50. Footnotes
1. The Supreme Court subsequently reversed the Ninth Circuit decision, .↩
1. SEC. 355. UNDISTRIBUTED ADJUSTED NET INCOME. For the purposes of this title the term "undistributed adjusted net income" means the adjusted net income (as defined in section 356) minus - (a) The amount of the dividends paid credit provided in section 27, computed without the benefit of subsection (b) thereof (relating to the dividend carryover); and (b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness.↩